UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA SCHWAB,<br><br>                       Plaintiff,<br><br>v.<br><br>H.J. HEINZ COMPANY and ABC-XYZ CORPORATIONS,<br><br>                      Defendants. | Civ. No. 11-6463 (KM)<br><br>**OPINION & ORDER** |

## MCNULTY, U.S.D.J.:

This matter comes before the Court in this closed case on the Motion (Dkt. No. 17) of the law firm of Dexter & Kilcoyne, Esqs. ("Dexter"), former counsel for the plaintiff, Patricia Schwab. Dexter seeks apportionment of attorney's fees and costs awarded to the plaintiff's current counsel, the law firm of Arturi, D'Argenio, Guaglardi & Meliti, LLP ("Arturi"), as part of a settlement of this case. For the reasons stated below, the motion is **DENIED**.

## BACKGROUND

In April of 2010, Patricia Schwab was injured when she ate a french fry containing a metal shard. The french fry was manufactured and distributed by H.J. Heinz Company and various unknown corporations. On April 28, 2010, Mrs. Schwab retained Bruce Dexter or the Dexter firm. (Certification of Bruce H. Dexter in Support of Motion to Apportion Costs and Attorneys' Fees to Prior Counsel of Plaintiff, dated Feb. 20, 2015 (Dkt. No. 17-2) ("Dexter Cert.") ¶2, Ex. A) Under that retainer agreement, Dexter was to be compensated on a contingency fee basis. (Dexter Cert., Ex. A) Dexter set out to evaluate the potential for bringing suit on Mrs. Schwab's behalf. The firm obtained medical

1

records, secured the offending metal shard, conducted legal research, and communicated with the defendants and potential expert witnesses. (Mem. of Law In Support of Motion to Apportion Costs and Attorneys' Fees to Prior Counsel of Plaintiff, dated Feb. 20, 2015, (Dkt. No. 17-3) p. 4)

On March 3, 2011, Mrs. Schwab fired Dexter and thereafter hired Arturi as counsel. (Dexter Cert. ¶ 2, Ex. B) In response to Arturi's request, Dexter transferred the file to Arturi,[1] along with an itemized bill for legal services and costs incurred during Dexter's ten-month representation of Mrs. Schwab. (Dexter Cert., Ex. D) That bill claimed fees of $10,167.50, calculated on an hourly basis, as well as costs of $247.75. Included in Dexter's communication was a request that Arturi retain a copy of the bill "so that [Dexter] can be compensated for our time spent on this matter at the conclusion of the case." (*Id.*)

In November 2011, now represented by Arturi, Patricia Schwab filed a complaint in this Court arising out of the injuries she sustained from ingesting the metal shard. (Dkt. No. 1) Dexter did not intervene in the case in any manner, nor did it attempt to file a lien for fees. In March 2013, the parties informed the Court that they had reached a settlement; on March 28, 2013, the Court ordered the case dismissed with prejudice. (Dkt. No. 14) The parties entered into a stipulation to dismiss the complaint, so-ordered by the Court on April 16, 2013. (Dkt. No. 16) The Clerk closed the file.

Some eighteen months later, on November 12, 2014, Arturi confirmed to Dexter that the underlying action had been settled, but stated that the terms of such settlement were confidential. (Dexter Cert., Ex. J) On February 20, 2015, Dexter filed this motion to share in the attorney's fees awarded to Arturi as part of the settlement. (Dkt. No. 17)

The claim that Dexter seeks to assert is not against Ms. Schwab, but against her counsel, Arturi. According to Dexter, Arturi received attorney's fees

---

[1]   Arturi's brief claims that Dexter did not turn over the file during the litigation. (Dkt. No. 20 at 3.) It is uncontested, however, that Dexter withdrew and Arturi took over the representation.

2

(probably on a contingency basis) in connection with the settlement of the action. Dexter seeks apportionment—*i.e.,* it believes it is entitled to a fair share of the fee collected by Arturi. Dexter's claim arises under New Jersey State law; Dexter seeks compensation "based on *quantum meruit* or a proportion of the total recovery." (Dkt. No. 17-3 at 3) (citing state case law).

On March 9, 2015, this Court bifurcated Dexter's motion, directing the parties to first brief the issue of the Court's ancillary jurisdiction. I reserved the merits of Dexter's claim until jurisdiction had been established. (Dkt. No. 19)

**LEGAL STANDARD AND DISCUSSION**

Ancillary jurisdiction, as I use the term here, refers to a federal court's ability to hear proceedings that are collateral to a case properly before the court, where those incidental proceedings do not have an independent basis for federal subject matter jurisdiction. *See Wright & Miller*, 13 Fed. Prac. & Proc. Juris. § 3523.2 (3d ed.). The exercise of ancillary jurisdiction is, as the parties here agree, discretionary. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1965); Opp. Br. at 3; Reply Br. at 8.

Ancillary jurisdiction is sometimes cited as a basis for a court to settle collateral disputes over attorney's fees. *Id.* In general, the court's power to dispose of a case "necessarily includes the power to resolve disputes with respect to the payment of attorneys' fees and expenses." *Novinger v. E.I. DuPont de Nemours & Co., Inc.*, 809 F.2d 212, 217 (3d Cir. 1987). It is not necessarily fatal that the case was closed. "It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx,* 496 U.S. 384, 395 (1990); *Novinger,* 809 F.2d at 217 (noting that the court's power to exercise ancillary jurisdiction is "broad enough to permit the resolution of those disputes after the underlying case has been resolved by judgment or settlement"). Indeed, where fees are to be collected on a

contingency basis, many attorney's fees issues cannot be resolved until the case has settled or gone to judgment. *Novinger*, 809 F.2d at 217.[2]

That general power to consider a post-settlement fee dispute only gets us so far, however. Here, Arturi emphasizes that one of the two law firms disputing the fee was never before this Court as counsel of record during the litigation. (Indeed, plaintiff dismissed Dexter long before the complaint was filed.) So this is not merely a matter of cleaning up issues left hanging between parties or counsel in the litigation. Rather, it is a previously-uninvolved attorney's attempt to intervene in a closed case to assert a collateral claim, not against a party but against a party's attorney. The existence of jurisdiction in that factual scenario was explicitly left undecided by this Circuit. *Novinger*, 809 F.2d at 218 n. 4 ("We leave for another day the question whether ancillary jurisdiction extends to the resolution of a post settlement fee dispute between two attorneys, only one of whom was attorney of record.").

Nor do the cases cited by the firms resolve the question.

In *Knoepfler v. Guardian Life Ins. Co. of Am.*, 2010 WL 3001380 (D.N.J. July 28, 2010), relied on by Arturi, the plaintiff's former co-counsel sought attorney's fees after the underlying action had settled. Judge Walls found that unlike the attorney in *Novinger,* who had raised his incidental claim while the action was pending, the former counsel in *Knoepfler* had waited "in the shadows" for the case to be terminated, and only then sought to reopen a closed case. The court declined to exercise ancillary jurisdiction.

*United States v. Cooper Health Sys.*, 940 F. Supp. 2d 208 (D.N.J. 2013), relied on by Dexter, involved a post-settlement dispute between a qui tam relator and his counsel over the percentage of fees owed under a contingency

---

[2] Arturi relies on *Knoepfler v. Guardian Life Ins. Co. of Am.*, 2010 WL 3001380 (D.N.J. July 28, 2010), where District Judge Walls read *Novinger* to say that ancillary jurisdiction over an incidental dispute was only appropriate when the underlying action was pending. 2010 WL 3001380 at * 3. Judge Irenas took issue with this interpretation of *Novinger*, noting that the "Third Circuit concluded that the rule of necessity ... must be broad enough to permit the resolution of those disputes after the underlying case has been resolved by judgment or settlement." *United States v. Cooper Health Sys.*, 940 F. Supp. 2d 208, 213 (D.N.J. 2013).

4

fee agreement. The late District Judge Irenas, citing *Novinger*, held that the court had ancillary jurisdiction to reopen the case and hear the dispute over fees. Judge Irenas explicitly disapproved the reasoning of *Knoepfler*, rejecting any rigid requirement that the underlying action be pending when the attorney fee motion is brought. 940 F. Supp. 2d at 211–12. *Cooper*, however, does not involve the issue reserved in *Novinger* and presented here. In *Cooper*, the firm filing the motion (unlike Dexter) had been counsel of record throughout the underlying action.

In short, *Novinger* and cases in this District do not cover the scenario in which *both* the claim and the party asserting it are pendent, and the case is closed, to boot. What is clear—the parties agree—is that my decision to exercise jurisdiction here is discretionary. I conclude that to exercise jurisdiction here would be an inadvisable exercise of discretion.

I take 28 U.S.C. § 1367(c) as my guide.[3] Although the statute primarily contemplates the assertion of jurisdiction while an action is ongoing, it states some considerations that may govern a district court's declination of jurisdiction:

(1) the claim raises a novel or complex issue of State Law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it had original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

---

3   I will not further vex the question of whether this is properly regarded as statutory supplemental jurisdiction or inherent ancillary jurisdiction. "Ancillary jurisdiction is a common law doctrine that survived the codification of supplemental jurisdiction in 28 U.S.C. § 1367." *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011). By its terms, Section 1367 relates to *claims* over which a court has supplemental jurisdiction, although it also includes those that involve the joinder of parties. Here we are concerned with a proceeding separate from the underlying action but in some ways related to it, involving attorneys but not actual parties.

28 U.S.C. § 1367(c).[4]

The issues between Dexter and Arturi, although they arise under State law, are perhaps not so novel that a district court should hesitate. At this late date, the apportionment or *quantum meruit* claim necessarily "predominates," because the claims over which the court possessed original jurisdiction are no longer extant.

Finally, the circumstances are exceptional and compelling. Dexter, in writing to Arturi, made it clear that it believed itself entitled to a fee, but took no further steps. It did not make any appearance in this litigation or attempt to assert a lien for fees. Its application comes very late—some two years after the settlement. And the issues Dexter asserts have very little overlap with the products-liability issues in the underlying lawsuit between Schwab and Heinz. This is a dispute between attorneys only. Dexter is not seeking payment from its former client, the plaintiff, who presumably has received the benefit of the settlement. Nor is Dexter trying to either vacate or enforce the settlement. Rather, Dexter as a third party is asserting a claim against a fee that presumably is in the hands of another attorney, Arturi. Such a dispute between non-parties to the underlying action bears a tenuous relation to the underlying action. Analysis of the merits of such a claim would involve contract law and the law of attorney and client; neither the fact-finding nor the legal analysis would have much to do with the merits of the underlying products liability action.

In short, this is a poor candidate for the court's discretionary exercise of ancillary jurisdiction. *See, e.g., Barreto v. Reed*, 1994 WL 396425, *1 (E.D. Pa. July 28, 1994) (declining to exercise ancillary jurisdiction over a dispute between attorneys where dispute did not arise from transaction at issue in the underlying action, court would have to engage in new fact-finding, and state proceedings would determine the attorney's respective rights and obligations).

---

[4] Furthermore, applying Section 1367 by analogy, a Court would have to consider whether the intervention of Dexter, a New Jersey law firm, would destroy diversity. *See* 28 U.S.C. § 1367(b).

This is a state-law dispute between attorneys that should be pursued, if anywhere, in state court.

This Opinion expresses no view as to the merits of the Dexter's Firm's claim with respect to attorney's fees.

### ORDER

Accordingly, based on the reasons set forth above, and for good cause shown;

**IT IS** this 6th day of November, 2015;

**ORDERED** that Dexter's Motion to apportion attorney's fees (Dkt. No. 17) is **DENIED** on jurisdictional grounds, without prejudice as to the merits.

The clerk shall re-close the file.

_____
KEVIN MCNULTY, U.S.D.J.

Date: November 6, 2015